**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 18, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

LAURA AGEE, surviving spouse and
personal representative of
the Estate of Rick Agee,

      Plaintiff-Appellant,

  v.

PURDUE PHARMACEUTICALS,
L.P.,

      Defendant-Appellee.

No. 05-6002
(D.C. No. CV-03-787-HE)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **SEYMOUR**, and **ANDERSON**, Circuit Judges.

Plaintiff Laura Agee appeals from the district court's order excluding the

proposed testimony of her expert witness and granting summary judgment in

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

favor of defendant Purdue Pharmaceuticals L.P. (Purdue).[1]  We have jurisdiction

under 28 U.S.C. § 1291 and affirm.

Following back surgery, Mrs. Agee's husband Rick Agee, was prescribed

OxyContin for pain relief.  Three days later, he was found dead by his wife.  An

autopsy revealed toxic levels of oxycodone (the active ingredient in OxyContin)

in his bloodstream and authorities concluded that he died of accidental, "acute

oxycodone toxicity."   Aplee. App. Vol. 1 at 46.  In her lawsuit against Purdue

(the manufacturer), Mrs. Agee claimed that because her husband took the

medication as prescribed, his death was the result of a defect in the drug and/or a

failure to warn.

To prove her claims, Mrs. Agee identified James O'Donnell as an expert

witness.  The essence of his proposed testimony was that an accumulation of

oxycodone caused Mr. Agee's death.  Purdue filed a motion in limine to exclude

the proposed testimony and for summary judgment.  Following a *Daubert* hearing,

the trial court granted the motions and this appeal followed.

On appeal,

> we review de novo the question of whether the district court applied
> the proper standard and actually performed its gatekeeper role in the
> first instance.  We then review the trial court's actual application of
> the standard in deciding whether to admit or exclude an expert
> testimony for abuse of discretion. . . .  Accordingly, we will not
> disturb the district court's ruling unless it is arbitrary, capricious,

---

[1]     Mrs. Agee agrees that if the trial court's order excluding the expert's
proposed testimony was correct, summary judgment was proper.

-2-

whimsical or manifestly unreasonable, or when we are convinced that the district court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.

*Dodge v. Cotter Corp.*, 328 F.3d 1212, 1223 (10th Cir. 2003) (internal citation and quotations omitted).

Rule 702 of the Federal Rules of Evidence codifies the Supreme Court's decision in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and sets forth the standard that expert testimony must meet to be admissible in evidence. As part of its gate keeping function, and in addition to determining whether the proposed expert is qualified to offer an opinion, the trial court must also determine whether "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.

In determining the reliability of expert testimony, there are several nonexclusive factors that the trial court may consider, including (1) whether the expert's theory or technique can be and has been tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) the known or potential rate of error of the technique or theory, and (4) the general acceptance of the theory or technique. *Daubert*, *328 F.3d* at 593-94. *Daubert* itself, however, recognizes these factors are not definitive, and a trial court has broad discretion to consider other factors in determining reliability. *Id.* at 594-95.

We have thoroughly reviewed the record and the parties' briefs. Assuming as true all the facts proffered by Mrs. Agee, we affirm substantially for the reasons given by the district court. The record reflects that James O'Donnell used a computer program to determine the biological parameters a hypothetical person would need to have to reach the toxic levels of oxycodone found in Mr. Agee's bloodstream, assuming he took the medication as prescribed. As the trial court found, there was no scientific basis for Dr. O'Donnell's conclusion that Mr. Agee died from an accumulation of oxycodone, instead of an overdose, because he was unaware of any person with the physiological attributes produced by his computer modeling. This finding, which renders the proposed expert testimony unreliable, is supported by record.

We **AFFIRM**.

Entered for the Court

Stephanie K. Seymour
Circuit Judge